UNITED STATES DISTRICT COURT  ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

THOMAS INDELICATO,

                             Plaintiff,

       - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                            Defendant.

MEMORANDUM AND ORDER
13-CV-4553

A P P E A R A N C E S:

    LAW OFFICES OF HARRY J. BINDER AND CHARLES E. BINDER, P.C.
        60 East 42nd Street
        Suite 520
        New York, NY 10165
    By:    Eddy Pierre Pierre
        *Attorney for Plaintiff*

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:    Arthur Swerdloff, Assistant U.S. Attorney
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Thomas Indelicato seeks review of the Social Security Administration's decision denying him disability benefits. Indelicato sought benefits based on a number of ailments, including back pain, respiratory problems, tendinitis in a finger of his left hand, and cardiovascular problems. A Social Security administrative law judge ("ALJ"), and ultimately the Acting Commissioner of Social Security, determined that Indelicato would be able to do some work and therefore denied benefits. Indelicato now argues that the ALJ failed to properly weigh

the opinion of his treating physician, failed to apply a relevant regulation to the facts of his case, and improperly evaluated his credibility. For the reasons that follow, the Commissioner's motion for judgment on the pleadings is granted, and Indelicato's is denied.

BACKGROUND

Indelicato filed for benefits on April 1, 2011; he claimed that his disability began December 23, 2009.

Indelicato was born in 1958. He graduated from high school and attended college for one year. For about twenty-five years, he was a letter carrier with the US Postal Service. R. 44. More recently, he worked as a janitor at a limousine company, as a laborer at a recycling facility, and as a dispatcher for a snow plow company. R. 43-44. Indelicato left his most recent job, the maintenance position at the limousine company, because back problems and respiratory sensitivity to cleaning products made it difficult for him to continue to work. R. 45. He did not immediately seek disability benefits; rather, he initially sought other work and collected unemployment benefits. R. 54-55.

Indelicato lives with his mother. He showers, shaves, and prepares himself simple meals. He goes outside about once a day, but he has difficulty walking more than a block without stopping to rest. He spends a typical day reading the newspaper or watching the news; he also shops for food about twice a week. He is able to pay bills and handle his own finances. R. 203-16. Indelicato has had back pain since a 1978 car accident, but the pain has recently worsened. R. 58. He walks with a cane, which he testified was prescribed by a doctor many years ago. R. 47.

Indelicato has been seeing Dr. Francis J. Anello since April of 2010. On May 23, 2012, Anello provided a summary of Indelicato's then-existing medical issues, stating that

Indelicato "always" complained of "dyspnea, bronchitis, & back pain." R. 418. He also noted the medications prescribed to Indelicato, including drugs for cholesterol, asthma and COPD (chronic obstructive pulmonary disease, a lung condition), anxiety, and back pain. *Id.* In Anello's opinion, Indelicato would be limited to under an hour of sitting and under an hour of standing in a typical eight-hour work day; could never lift, and only occasionally carry, an object of up to five pounds; was essentially precluded from grasping, turning, or twisting objects with both hands; and could use his fingers and arms with moderate limitations. R. 409-10. Anello also believed that Indelicato could not tolerate even low workplace stress because he had "too many problems." R. 412. In sum, Anello did not believe that Indelicato could work at all. R. 416.

Dr. John Joseph saw Indelicato to perform a consultative medical exam in May of 2011. In addition to relating a medical history broadly consistent with that described by Anello, Indelicato reported that for the past year, Indelicato had had difficulty bending the fourth finger of his left hand, causing him severe pain. R. 271. Joseph's physical exam showed 5/5 grip strength in the right hand and 4/5 in the left. Joseph also observed that Indelicato could walk and squat as normal, with a normal gait and stance. Joseph diagnosed assessed emphysema/asthma, history of low back pain with arthritis, history of vertigo, history of hypoglycemia, history of cardiac diseases based on abnormal EKG, and left hand fourth digit tendinitis. R. 274. In Joseph's opinion, Indelicato: should avoid heavy lifting due to his back condition; should avoid a number of potential respiratory irritants; could not perform some activities requiring fine manipulations of his left hand; and should avoid mild or greater exertion due to concerns about his cardiac condition. R. 274-75.

3

Indelicato filed for disability benefits on March 16, 2011. Those claims were denied on June 14, 2011, and Indelicato sought a hearing. He appeared before ALJ Gal Lahat on May 7, 2012. In a decision dated June 26, 2012, ALJ Lahat found that Indelicato was not disabled. The Appeals Council denied review, rendering the ALJ's decision final on June 18, 2013.

DISCUSSION

A.  *The Legal Standards*

A claimant seeking disability insurance benefits must establish that, "by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C. § 1382c(a)(3)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* § 1382c(a)(3)(B).

The Social Security regulations direct a five-step analysis for the Commissioner to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform past work. Finally, if the claimant is unable to

4

perform his past work, the [Commissioner] then determines
whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation marks omitted) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth this process). The claimant bears the burden of proof in the first four steps, the Commissioner in the last (but only to show that jobs exist in the national or local economies that the claimant can perform given her RFC and vocational factors). *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).

The Commissioner decides whether the claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1527(e)(1). Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the record contains evidence which "a reasonable mind might accept as adequate to support [the Commissioner's] conclusion," this Court may not "substitute its own judgment for that of the [Commissioner] even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quotation marks omitted).

B. *Application*

Indelicato makes three arguments in support of remand. First, he argues that the ALJ misapplied the treating physician rule, and that under a proper application of the rule, his claim should have been granted. Second, he argues that a specific regulation should decide the case in his favor. Third, he argues that the ALJ did not properly evaluate his credibility.

1. *The Treating Physician Rule*

5

Indelicato argues first that the ALJ did not accord sufficient weight to the opinion of his internist, Dr. Anello.

Under 20 C.F.R. §§ 404.1527(c) and 416.927(c), the opinion of a treating physician is entitled to "controlling" weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," unless it conflicts with other substantial evidence in the record. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(c)(2).

Indelicato points to a number of pieces of evidence consistent with Anello's view that Indelicato would be totally unable to work. He also argues that the ALJ did not cite specific record evidence to refute Anello's opinions. According to Indelicato, the ALJ essentially exercised lay judgment about medical facts and ignored the expert judgment of Anello.

The Second Circuit has cautioned that it requires an "overwhelmingly compelling" critique of a doctor's expert judgment in order for an ALJ to reject that opinion. *See Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000). But that statement addresses situations in which an ALJ directly critiques a doctor's medical opinion. It does not bar the ALJ from choosing between competing medical opinions, or from comparing the doctor's overall assessment to other record evidence. Although an ALJ is not a doctor, and therefore is not equipped to make medical judgments, she of course may (indeed, must) privilege one expert's assessment over a contrary one, just as juries in criminal and civil cases credit one side's expert over the other's. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (noting that an ALJ may "choose between properly submitted medical opinions") (internal quotation marks omitted). It is true that, under the treating physician rule, the claimant's own doctor is entitled to some

6

additional weight. But the rule does not make a treating physician's views unquestionable. The final determination of disability is reserved for the ALJ. Although expert medical evidence will bear significantly on the question, it does not follow that the ALJ must always have "overwhelmingly compelling" reasons to reject a view contrary to her ultimate conclusion.

Here, the ALJ did not find Anello's assessment persuasive when measured against other evidence in the record, including the report of Joseph. *See* R. 30. For example, the ALJ found unsupported Anello's conclusion that Indelicato would be precluded from sitting or standing for any length of time, because evidence of Indelicato's daily activities (shopping and preparing simple meals for himself) contradicted that view. The ALJ also noted that contrary to Anello's report, there was no record evidence of bilateral hand and arm disability; rather, Indelicato had only ever complained of a problem with one finger of one hand. The ALJ noted that Anello's assessment of Indelicato's medical problems as severe was in tension with his medical history and treatment – for example, he was taking only Motrin and muscle relaxants for his back pain, and he had not seen a pain specialist. *See* R. 418, 58. Similarly, the ALJ noted that Indelicato's respiratory problems were generally controlled by medication. R. 30.

By contrast, the ALJ noted that Joseph believed that Indelicato had some restrictions in heavy lifting and carrying due to his back; moderate restrictions in the use of his left hand, due to his tendinitis; limitations on his exposure to respiratory irritants; and limitations on exertion due to his cardiac history. R. 26. But those restrictions were not so totally disabling as to prevent him from working in properly limited jobs. *See also* R. 271-75 (Joseph's summary). The ALJ found Joseph's views consistent with the whole record.

In sum, the ALJ compared the treating physician's evaluation with other record evidence, including expert evidence. The record contained a "[g]enuine conflict[] in the medical

7

evidence," and it was proper "for the Commissioner to resolve" that conflict. *Veino*, 312 F.3d at 588.

### 2. *Medical-Vocational Guideline 201.14*

Indelicato argues next that the Medical-Vocational Guidelines, contained at 20 C.F.R. § 404(P) App. 2 § 200.00 *et seq.*, dictate a finding of disability because the findings of fact coincide with certain criteria.[1]

This argument founders at a prerequisite step, however. The Medical-Vocational Guidelines come into play only if the ALJ reaches the fifth and final step of the analysis. *See, e.g., Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). Here, the ALJ did not reach the fifth step – rather, the ALJ concluded at the fourth step that Indelicato would be able to perform past relevant work as a dispatcher. *See* R. 30-31.

### 3. *The ALJ's Evaluation of Indelicato's Credibility*

Finally, Indelicato argues that the ALJ did not properly evaluate his credibility.

As I have previously written,

> In resolving whether a plaintiff is disabled, the Commissioner must consider subjective evidence of pain or disability testified to by the plaintiff. The ALJ has discretion to evaluate a plaintiff's credibility, and if the ALJ's decision to ignore plaintiff's subjective complaints of pain is supported by substantial evidence, then this Court must uphold that determination. However, the ALJ must set forth his reasons for discounting a plaintiff's subjective complaints with sufficient specificity to enable the district court to decide whether the determination is supported by substantial evidence.

*Gallo v. Astrue*, No. 10-CV-1918 JG, 2010 WL 3999093, at *7 (E.D.N.Y. Oct. 12, 2010) (internal citations, quotation marks, and brackets omitted).

---

[1] The cited guideline would dictate a finding of disability at the fifth stage of the analysis if the applicant is closely approaching advanced age, is a high school graduate or more but without education that provides direct entry into skilled work, and has previous skilled or semi-skilled work history but the relevant skills are non-transferrable. *See* 20 C.F.R. 404(P) Appendix 2 § 201.14.

Here, proceeding under the two-step credibility framework set out at 20 C.F.R. § 404.1529 and § 416.929, the ALJ agreed that the medically determinable impairments alleged could cause Indelicato's symptoms. But the ALJ then found "not fully credible" Indelicato's characterizations of the "intensity, persistence, and limiting effects of these symptoms." R. 27. The ALJ made this finding based in part on non-medical evidence of Indelicato's activities and abilities, as well as on Indelicato's treatment history. The ALJ noted that Indelicato's conditions seemed sufficiently well controlled with medication and other treatment that he had only rarely sought emergency care or been hospitalized; that Indelicato did not complain of side effects of his medications, and that his treatment regimen was stable; and that his conditions did not apparently prevent him from engaging in some daily activities such as shaving, shopping, preparing some food, and assisting with some household chores. R. 27-28. The ALJ also noted that Indelicato's conditions did not impede his ability to socialize and maintain attention, concentration and pace. R. 28. With respect to Indelicato's use of a cane, the ALJ acknowledged Indelicato's testimony that the cane had originally prescribed by another doctor. *See* R. 25. But the ALJ also characterized the cane as "self-prescribed for stability," and noted that no record medical evidence (for example, neurological analysis) demonstrated that he now needed it. R. 28.

Indelicato argues that the ALJ erred by failing to consider his 30-year work history, by mischaracterizing his use of a cane, and by relying improperly on his daily activities. But these arguments do not persuade me that the ALJ erred. First, the ALJ did note Indelicato's history of consistent work, but the opinion also weighed Indelicato's decision to stay on unemployment benefits after the date he claimed to have become fully disabled – suggesting that he had then still felt himself able to work. R. 28; R. 55-56 (Indelicato's testimony). Second, the

ALJ was correct that the record did not contain *medical* evidence that Indelicato required a cane; instead, the evidence on the cane was limited to his own testimony. It is true that the ALJ has a duty to develop the record, *see Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). But the burden of proof is the plaintiff's. Furthermore, this was only one consideration of many, and even if the ALJ erred, it was at most a minor factor, not warranting remand by itself. Third, a claimant's daily activities are precisely the kind of evidence on which the ALJ must rely in order to assess how medical conditions actually affect a person's experience. *See* 20 C.F.R. § 416.929(a) (listing "daily activities" as a factor used to evaluate reported symptoms). It is true, as Indelicato argues, that the ability to perform many specific daily activities does not itself mean that he is not disabled. But taken together, these activities give texture both to medical diagnosis and subjective accounts, and they provide an important objective basis by which to evaluate a person's symptoms. It was not unreasonable for the ALJ to weigh Indelicato's ability to take care of himself and socialize.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, and Indelicato's cross-motion is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 21, 2014
      Brooklyn, New York